Callahan, J.
The petitioner-appellant Hart Knitwear Corp. (hereinafter called the employer or the employer corporation) seeks a stay of arbitration proceedings initiated on the demand of the respondent union. A collective labor agreement expiring on July 15, 1950, was entered into between an employers’ association (of which the petitioner was a member) and the union. It provided for arbitration of all disputes and grievances arising under or in any manner related to the agreement. The demand for arbitration was apparently based on the union’s claim that the employer had been guilty of a “ lockout ” in violation of the terms of the contract.
The employer was a New York corporation carrying on the business of manufacturing knitted polo shirts for women and children. Its plant was located at 950 Hart Street, Brooklyn.
On or about December 30, 1949, the employer corporation filed a certificate of dissolution and proceeded to wind up its affairs. The corporate assets were distributed among its stockholders consisting of Ellison R. Kosoff (also its president) who owned 50% of the corporate stock and Marcus and Herman Rottenberg who owned the remaining 50%. Kosoff opened a new business at 1333 Broadway, Brooklyn, under the name of King Neptune Manufacturing Co., intending to make men’s sport shirts of woven rather than knitted material. The Rottenbergs opened a plant in Pennsylvania.
The employer had previously notified the union that it intended to cease operations and terminate its business, and that its final payroll was paid out on November 9, 1949. The union’s demand for arbitration aforesaid was served on Kosoff in January, 1950.
In the circumstances of this case the only question is whether or not there exists an arbitrable dispute. The employer contends that no such issue exists by reason of its dissolution. The union, however, makes the contention tha.t the alleged dissolu *623 tion or termination of the employer’s business was not accomplished in good faith, and that it is being used as a device to evade the employer’s obligations under the collective agreement. The union also asserts that it is for the arbitrator to determine the effect of a dissolution where, as here, it is followed by a resumption of business by the president and a 50% stockholder of the dissolved corporation.
Although the contract contains numerous provisions with respect to its scope, the only provision that seems remotely applicable to the present issue is one that prohibits any officer or stockholder of a corporate party from becoming interested in any other firm or corporation engaged in a line of work which is intended to be covered by the agreement, unless such other firm or corporation shall immediately enter into similar contractual relations with the union for the term of the agreement. In this connection it may be noted that the present proceeding is not against an officer or stockholder, and that the employer’s business was the manufacture of knitted polo shirts for women and children, whereas the new business in which the president-stockholder of the employer corporation proposed to engage was the manufacture of woven sport shirts for the men’s trade.
In an application for arbitration the question is always presented to the court as to whether a party agreed to arbitrate the issue sought to be arbitrated (Matter of Bullard [Grace Co.], 240 N. Y. 388, 396). The mere assertion by a party as to the meaning of a contractual provision contrary to its plain import cannot make an arbitrable issue (Matter of International Assn. of Machinists [Cutler-Hammer, Inc.], 271 App. Div. 917, affd. 297 N. Y. 519).
In this case we find it reasonably clear that the parties by their agreement did not obligate the corporate employer to continue in business for the term of the agreement or any specified period, nor did they provide that the employer be bound by the contract after corporate dissolution. The agreement was one that could be continued from year to year by the employer association acting for its members. It would not seem likely under such circumstances that the parties intended the liability of a corporate member of the association to continue after its dissolution. At least, the contract contained no express provision for such continued liability.
There is no dispute in this case that a certificate of dissolution was filed by the corporate employer. The legal effect of such a *624 step on corporate liability could not give rise to any arbitrable issue, but is a question for the court in determining whether an arbitrable dispute exists. While it is true that a corporation is deemed to continue in existence for the purpose of suit and, therefore, it might be said that the employer corporation should be deemed to continue for the purpose of arbitration, this would not be sufficient to require the corporation to proceed to arbitration in the absence of an arbitrable dispute.
We do not think that any arbitrable dispute concerning the good faith of the employer corporation in dissolving its corporate existence is presented either in form or substance under the present circumstances. Nor do we find any arbitrable dispute as to the legal effect of dissolution. The moving papers show that the demand for arbitration was based on the charge of “ lockout ”. The employer’s liability for a “ lockout ” would require its continued corporate existence. A dissolved corporation cannot continue in business or furnish employment. The demand for arbitration does not appear to assert any claim of damages for fraud. Even aside from the form of the demand, we think that no arbitrable issue could exist with respect to the employer’s good faith. In order to constitute actionable bad faith it would be necessary that the corporate employer had assumed an obligation not to dissolve its corporate existence during the period of the contract or had assumed some other contractual obligation that survived dissolution. We find no such obligation express or implied in the agreement between the parties.
We are not called upon to pass on any question of liability of any officer or stockholder of the corporate employer.
The order appealed from should be reversed, with $20 costs and disbursements, and the motion to stay arbitration granted.